**IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF NEW YORK**

James Keivom,

                Plaintiff,

      v.

HubPages, Inc.,

                Defendant.

Case No:

**COMPLAINT**

JURY TRIAL DEMAND

Plaintiff James Keivom ("*Plaintiff*"), by and through his undersigned counsel, for his Complaint against defendant HubPages, Inc. ("*Defendant*") states and alleges as follows:

**INTRODUCTION**

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq*.

2. Plaintiff pleads his claims in the alternative. The First Count alleges that Defendant directly infringed Plaintiff's copyright by copying and displaying the Photograph. To the extent it is determined that the act of copying and display was performed by Defendant's contributing writer rather than by Defendant itself, the Second Count alleges, in the alternative, that Defendant is vicariously liable for that infringement. Allegations that Defendant directly committed the infringing acts and allegations that a contributing writer did so are pleaded in the alternative pursuant to Rule 8(d) of the Federal Rules of Civil Procedure.

3. James Keivom *("Keivom")* is a New York City–based professional photojournalist who spent years on staff at the New York Daily News and now contributes to the New York Post. The New York Press Photographers Association named him its Photographer of the Year for 2015. His acclaimed work spans breaking news, funerals, sports, and social crises, including his 2025 honored series "Drug Epidemic in The Hub," documenting the Bronx fentanyl crisis. He licenses his images commercially for editorial and print use.

1

4.      Keivom created a photograph of Blood seeps from the wall of a house off campus where four University of Idaho students were fatally stabbed (the "*Photograph*") in which Plaintiff owns the rights and licenses for various uses including online and print publications.

5.      Defendant owns and operates a user-generated online publishing platform at hubpages.com and a network of associated niche publishing sites (collectively, the "HubPages Platform"), which Defendant operates as a commercial enterprise the revenue of which is generated by monetizing the individual articles ("Hubs") published on it by its contributing writers ("Hubbers").

6.      Upon information and belief, Defendant generates revenue principally through (a) online advertising displayed on or alongside each article, and (b) affiliate-marketing commissions earned on products and services sold through links embedded within each article.

7.      Defendant owns and operates a website at thecrimewire.com (the "*Website*"). Upon information and belief, the Website is part of, hosted by, and/or operated as one of the niche publishing sites within the HubPages Platform, and articles published on the Website are created, screened, published, and monetized by Defendant through the same processes and revenue programs described herein.

8.      Defendant, without permission or authorization from Plaintiff, actively copied and displayed the Photograph on the Website and engaged in this misconduct knowingly and in violation of the United States copyright laws.

## PARTIES

9.      Plaintiff is an individual who is a citizen of the State of New York and maintains a principal place of business in Bronx County, New York.

10.      Defendant HubPages, Inc., is a Delaware corporation with a principal place of business at 200 Vesey Street, 24th Floor, Manhattan in New York County, New York.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

12.     This Court has personal jurisdiction over Defendant because it maintains its principal place of business in New York.

13.     Venue is proper under 28 U.S.C. §1391(b)(2) because Defendant does business in this Judicial District and/or because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## FACTS COMMON TO ALL CLAIMS

**A.     Plaintiff's Copyright Ownership**

14.     Plaintiff is a professional photographer by trade who is the legal and rightful owner of certain photographs which Plaintiff commercially licenses.

15.     Plaintiff has invested significant time and money in building Plaintiff's photograph portfolio.

16.     Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of Plaintiff's photographs while many others are the subject of pending copyright applications.

17.     Plaintiff's photographs are original, creative works in which Plaintiff owns protectable copyright interests.

18.     On November 18, 2022, Plaintiff first published the Photograph. A copy of the Photograph is attached hereto as Exhibit 1.

19.     Plaintiff published the Photograph by commercially licensing it to the New York Post for the purpose of display and/or public distribution.

20.     In creating the Photograph, Plaintiff personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work.

21.     On January 30, 2023, the Photograph was registered by the USCO under Registration No. VA 2-337-320.

22.     Plaintiff created the Photograph with the intention of it being used commercially and for the purpose of display and/or public distribution.

3

**B.     Defendant's Infringing Activity**

23.     Defendant is the registered owner of the Website and is responsible for its content.

24.     Defendant is the operator of the Website and is responsible for its content.

25.     The Website is a key component of Defendant's popular and lucrative commercial enterprise.

26.     The Website is monetized in that it contains paid advertisements and, on information and belief, Defendant profits from these activities.

27.     The Website is monetized in that it sells merchandise to the public and, on information and belief, Defendant profits from these activities.

28.     Upon information and belief, Defendant's advertising revenue is earned on a per-impression and per-click basis, such that the revenue attributable to any given article increases as the number of views of, and clicks on advertisements within, that article increases.

29.     Upon information and belief, Defendant shares advertising revenue with its contributing writers on an impressions basis, and the revenue Defendant derives from any given article is therefore a direct function of the volume of traffic that article attracts.

30.     Upon information and belief, for its principal advertising programs, including the HubPages Ad Program and Google AdSense, Defendant employs a revenue-sharing arrangement under which approximately sixty percent (60%) of the advertising revenue generated by an article is allocated to the contributing writer and approximately forty percent (40%) is retained by Defendant.

31.     Upon information and belief, for affiliate-marketing programs, including the Amazon and eBay programs, Defendant retains a share of the commissions generated through links embedded in an article, on terms that, upon information and belief, approximate a fifty-percent (50%) split.

32.     Upon information and belief, Defendant implements this revenue sharing by apportioning the advertising impressions served on each article between the writer's monetization accounts and Defendant's own monetization accounts, such that for a given quantity of views, a

majority of the impressions are served to the writer's benefit and the remainder are served to Defendant's benefit; in either case, the revenue earned is generated by, and increases with, the traffic to that article.

33.    Accordingly, Defendant's revenue from any given article does not derive from a flat, fixed, or periodic fee that Defendant collects without regard to the content or performance of the article. Rather, Defendant's revenue is tied directly to the performance of each individual article, and Defendant earns more when an article attracts more readers, generates more advertising impressions and clicks, and produces more affiliate activity.

34.    Upon information and belief, the appeal or "draw" of the content of an article, including compelling, professionally created imagery such as the Photograph, attracts and retains readers, thereby increasing the views, advertising impressions, clicks, and affiliate activity on that article, and in turn increasing the advertising and affiliate revenue Defendant earns from it.

35.    Upon information and belief, the infringing article displaying the Photograph attracted and retained readers by reason of, among other things, the dramatic and newsworthy character of the Photograph, thereby generating advertising and affiliate revenue from which Defendant received a direct financial benefit.

36.    A direct causal relationship therefore exists between the Infringement and the financial benefit Defendant received, in that the financial benefit flowed directly from the views, impressions, clicks, and affiliate activity generated by the infringing article itself, and not from the sale of any service untethered to the infringing activity.

37.    Upon information and belief, Defendant's business model depends on aggregating advertising and affiliate revenue across a high volume of articles and traffic, and a disproportionate share of Defendant's total revenue is generated by a comparatively small number of high-traffic articles.

38.    Upon information and belief, Defendant accordingly has a direct and substantial financial interest in maximizing the traffic to, and the monetization of, the articles published on the Website, including the infringing article displaying the Photograph.

39.     Upon information and belief, every article submitted for publication on the Website is subject to a quality review process administered by Defendant, and an article that does not satisfy Defendant's editorial and quality standards is not published, is not "Featured," and does not generate meaningful revenue.

40.     Upon information and belief, Defendant thereby exercises control over which articles are published, Featured, monetized, and displayed on the Website, and Defendant had the right and ability to refuse to publish, to decline to Feature, to edit, to de-index, and to remove the infringing article displaying the Photograph, including for the reason that it infringed Plaintiff's copyright.

41.     By declining to exercise its right and ability to supervise and control the infringing conduct while continuing to derive a direct financial benefit from the infringing article, Defendant profited from the Infringement while declining to stop or limit it.

42.     Upon information and belief, Defendant has not implemented adequate internal policies to verify copyright ownership before content use, indicating a gross negligence in legal compliance, which is essential for a company with Defendant's reach, capabilities, and level of sophistication.

43.     Upon information and belief, Defendant's internal policies, if any, are either not designed to verify copyright ownership before content use or are systematically ignored, indicating a willful, recurring disregard for copyright compliance.

44.     Defendant's failure to adopt or effectively enforce internal copyright policies, if any, indicates *de facto* willful infringement.

45.     On or about December 15, 2022, without permission or authorization from Plaintiff, Defendant volitionally copied and displayed the Photograph on the Website as part of an on-line story at URL: https://thecrimewire.com/true-crime/TheIdahoMurders. A copy of a screengrab depicting the Infringement is attached hereto as Exhibit 2.

46.     The Photograph was intentionally and volitionally copied and stored by Defendant at    URL:    https://images.saymedia-content.com/.image/c_limit%2Ccs_srgb%2Cq_auto:eco%

2Cw_700/MTk0NDY2ODM0MjQ4OTAyMzIx/theidahomurders.webp.

47.    The Infringement is an exact copy of Plaintiff's original image that was directly copied and displayed by Defendant

48.    Plaintiff first observed the Infringement on June 22, 2023.

49.    Upon information and belief, the Photograph was copied and displayed by Defendant without license or permission, thereby infringing on Plaintiff's copyrights in and to the Photograph.

50.    The Infringement includes a URL ("*Uniform Resource Locator*") for a fixed tangible medium of expression that was sufficiently permanent or stable to permit it to be communicated for a period of more than transitory duration and therefore constitutes a specific infringement.

51.    Upon information and belief, Defendant takes an active and pervasive role in the content posted on its Website, including, but not limited to copying, posting, selecting, commenting on and displaying images including but not limited to Plaintiff's Photograph.

52.    Upon information and belief, Defendant directly contributes to the content posted on the Website, by inter alia, allowing reporters, authors and editors, including but not limited to Michelle Short who is listed as a notable contributing writer for the Website (the "Contributors"), to create and publish content on the Website.

53.    Upon information and belief, the Contributors created and published the infringing content on the Website within the scope of, and pursuant to, the editorial, quality-review, publication, and revenue-sharing structure that Defendant established and controlled.

54.    Upon information and belief, the Photograph was willfully and volitionally posted to the Website by Defendant.

55.    Upon information and belief, Defendant was aware of facts or circumstances from which the determination regarding the Infringement was apparent. Defendant cannot claim that it was not aware of the infringing activities, including the specific Infringement which form the basis of this complaint, since such a claim would amount to only willful blindness to the Infringement

7

on the part of Defendant.

56. Upon information and belief, Defendant engaged in the Infringement knowingly and in violation of applicable United States copyright laws.

57. Upon information and belief, Defendant has the legal right and ability to control and limit the infringing activities on its Website and exercised and/or had the right and ability to exercise such right.

58. Upon information and belief, Defendant monitors the content on its Website.

59. Upon information and belief, Defendant has received a financial benefit directly attributable to the Infringement.

60. Upon information and belief, the Infringement increased traffic to the Website and, in turn, caused Defendant to realize an increase in its business revenue.

61. Upon information and belief, a large number of people have viewed the unlawful copies of the Photograph on the Website.

62. Upon information and belief, Defendant at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

63. Defendant's use of the Photograph harmed the actual market for the Photograph.

64. Defendant's use of the Photograph, if widespread, would harm Plaintiff's potential market for the Photograph.

65. On or about January 22, 2024, Plaintiff, via counsel, served a letter seeking to address the complaints contained herein concerning Defendant's infringement of Plaintiff's rights protected work.

66. Despite Plaintiff's efforts and willingness to address Defendant's infringing activity, Defendant failed to respond, and Plaintiff was forced to seek judicial intervention for Defendant's infringing activity.

67. Further, despite Plaintiff's notification to Defendant concerning its infringing activity, Defendant continues to infringe on Plaintiff's work thereby establishing the willful nature of its conduct

68. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

## FIRST COUNT
### *(Direct Copyright Infringement, 17 U.S.C. §501 et seq.)*

69. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

70. The Photograph is an original, creative work in which Plaintiff owns a valid copyright.

71. The Photograph is properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

72. Plaintiff has not granted Defendant a license or the right to use the Photograph in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendant.

73. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendant improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in its copyrights.

74. Defendant's reproduction of the Photograph and display of the Photograph constitutes willful copyright infringement.

75. Upon information and belief, Defendant willfully infringed upon Plaintiff's copyrighted Photograph in violation of Title 17 of the U.S. Code, in that Defendant used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Photograph without Plaintiff's consent or authority.

76. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each infringement pursuant to 17 U.S.C. § 504(c).

77.     As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant.

78.     As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

## SECOND COUNT
### *(Vicarious Copyright Infringement)*

79.     Plaintiff repeats and incorporates, as though fully set forth herein, each and every allegation contained in the preceding paragraphs, as though set forth in full herein.

80.     This Count is pleaded in the alternative to the First Count. To the extent the Court or a finder of fact determines that Defendant did not itself directly copy and display the Photograph, the direct infringement was committed by Defendant's contributing writer, Michelle Short, who authored and published the on-line story at URL: https://thecrimewire.com/true-crime/TheIdahoMurders in which the Photograph was reproduced and displayed without license or authorization, and Defendant is vicariously liable for that infringement.

81.     Michelle Short directly infringed Plaintiff's copyright in the Photograph by reproducing, storing, and publicly displaying an exact copy of the Photograph on the Website, including by causing it to be stored at URL: https://images.saymedia-content.com/.image/c_limit%2Ccs_srgb%2Cq_auto:eco%2Cw_700/MTk0NDY2ODM0MjQ4O TAyMzIx/theidahomurders.webp, without Plaintiff's license, consent, or authorization, in violation of Plaintiff's exclusive rights under 17 U.S.C. § 106.

82.     Upon information and belief, at all material times hereto, Defendant had the right and ability to supervise and/or control the infringing conduct of the Contributors, including

10

Michelle Short, and declined to exercise the right and ability to supervise or control that infringing conduct despite its legal right to stop or limit the directly infringing conduct as well as the practicable ability to do so.

83. Defendant's right and ability to supervise and control the infringing conduct was present, existing, and actually exercised. Under the architecture of the Website as it presently exists, Defendant: (a) operates an editorial and automated Quality Assessment Process ("QAP") through which every article is screened before it is published or "Featured" on the Website; (b) reserves and exercises the right to refuse to publish, to edit, and to remove any article or image, including for violation of the intellectual property rights of others; (c) reserves and exercises the right to remove an article's "Featured" status and to de-index it from search engines; and (d) reserves and exercises the right to suspend or terminate the accounts of its contributing writers. The ability to block a contributor's access to the Website for any reason whatsoever, and the ability to refuse or remove the specific article and image at issue, constitute the right and ability to supervise the infringing activity.

84. Defendant exercised this control in practice by screening articles through the QAP, by featuring and de-featuring articles based on their quality and performance, and by editing and removing content that did not meet its standards. Defendant had the practicable ability to detect and prevent the reproduction and display of the Photograph before publication, including by verifying the licensing of images submitted by its contributing writers, but declined to do so. Had Defendant exercised its right to the fullest extent, the Infringement would not have occurred or would have been promptly removed.

85. As a direct and proximate result of such refusal to exercise its right to stop or limit the infringing conduct, Defendant has continued to infringe upon Plaintiff's Photograph, which in

11

turn generates profits for Defendant directly from the use of the Infringement.

86.    In the further alternative, and independent of vicarious liability, Michelle Short acted as Defendant's agent with respect to the creation, publication, and monetization of content on the Website. Defendant manifested its intent to grant authority over the production of content through its QAP, editorial standards, featuring decisions, and revenue-sharing program; the writer agreed to and operated within that structure; and Defendant retained control over key aspects of the undertaking, including whether content would be published, featured, edited, removed, or de-indexed, and how the resulting advertising revenue would be apportioned. The existence of an agency relationship turns on the parties' course of conduct and the principal's control over key aspects of the work, and any characterization of the writer as an "independent contractor" is not dispositive, because an independent contractor may simultaneously be an agent.

87.    Defendant enjoyed a direct financial benefit from the Infringement from *inter alia*, the advertising revenue generated by the infringing article itself. Unlike a flat periodic subscription fee that a defendant collects regardless of whether infringement occurs, Defendant's revenue is tied directly to the performance of each individual article. Defendant monetizes the Website by placing advertisements on each article and earns revenue based on the impressions and clicks that each article generates. Defendant retains a percentage of that per-article advertising revenue—on information and belief, approximately forty percent—and pays the remainder to the contributing writer. Defendant also earns affiliate commissions on products sold through links embedded in articles. Because the Photograph is a dramatic, professionally created image depicting the scene of a widely publicized crime, it served as a "draw" that attracted and retained readers to the infringing article, thereby increasing the impressions, clicks, and affiliate activity on that article and the advertising and affiliate revenue Defendant earned from it. A direct causal relationship

12

therefore exists between the Infringement and the financial benefit Defendant received, and that benefit flowed directly from the act of infringement and not merely from the sale of a service untethered to the infringing activity. The draw need not be the primary or a substantial draw; it need only be a draw.

88.    Upon information and belief, Defendant enjoyed a directed financial benefit from using the appeal or "draw" of Plaintiff's Photograph to increase user traffic to the infringing article, thereby increasing the advertising and affiliate revenue Defendant generated from that article.

89.    Defendant is liable as a vicarious infringer since it profited from the Infringements while declining to exercise a right to stop or limit it.

90.    Upon information and belief, Defendant willfully vicariously infringed upon Plaintiff's copyrighted Photograph in violation of Title 17 of the U.S. Code.

91.    As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the Infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each work infringed pursuant to 17 U.S.C. § 504(c).

92.    As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may award Plaintiff the recovery of its reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505.

93.    As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of his copyrights pursuant to 17 U.S.C. § 502.

## **JURY DEMAND**

94.    Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court enters a judgment finding that Defendant has infringed on Plaintiff's rights to the Photograph in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

a.  finding that Defendant infringed Plaintiff's copyright interest in and to the Photograph by copying and displaying it without a license or consent;

b.  for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each infringement pursuant to 17 U.S.C. § 504(c), whichever is larger;

c.  for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

d.  for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505

e.  for pre-judgment interest as permitted by law; and

f.  for any other relief the Court deems just and proper.

DATED: June 19, 2026

**SANDERS LAW GROUP**

By: ___*/s/ Craig Sanders*___
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 128032

*Attorneys for Plaintiff*

14